IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Rosalie Grant,                          :

        Plaintiff,                  :

    v.                                  :     Case No. 2:04-cv-1091

Bob Taft, et al.,                       :     JUDGE FROST

        Defendants.                 :

ORDER AND REPORT AND RECOMMENDATION

Plaintiff, Rosalie Grant, formerly an inmate at the Ohio Reformatory for Women in Marysville, Ohio (ORW), filed this action under 42 U.S.C. §1983 claiming that certain conditions at the ORW violated her constitutional right to be free from cruel and unusual punishment.  The complaint contains three primary claims: that Ms. Grant was exposed to second-hand tobacco smoke (or ETS, which stands for environmental tobacco smoke); that she did not receive adequate treatment for medical conditions including sarcoidosis and pneumonia; and that her living quarters were infested with spiders and other insects.  The only defendants remaining in the case against whom these claims are asserted are Reginald Wilkinson, the former Director of the Ohio Department of Rehabilitation and Correction, Patricia Andrews, the Warden of ORW, Jennifer Hildebrand, the Deputy Warden of Operations at ORW, and Ms. Anunike, who was a Unit Manager in one of the ORW residential units where Ms. Grant was housed at various times.  All of those defendants have moved for summary judgment.  Responsive and reply memoranda have been filed and, in addition, Ms. Grant filed a reply to the reply.  For the following reasons, it will be recommended that the motion for summary judgment be granted.

I.

Summary judgment is not a substitute for a trial when

facts material to the Court's ultimate resolution of the case are in dispute.  It may be rendered only when appropriate evidentiary materials, as described in Fed. R. Civ. P. 56(c), demonstrate the absence of a material factual dispute and the moving party is entitled to judgment as a matter of law. Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464 (1962).  The moving party bears the burden of demonstrating that no material facts are in dispute, and the evidence submitted must be viewed in the light most favorable to the nonmoving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970).  Additionally, the Court must draw all reasonable inferences from that evidence in favor of the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654 (1962).  The nonmoving party does have the burden, however, after completion of sufficient discovery, to submit evidence in support of any material element of a claim or defense on which that party would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  Of course, since "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, the responding party is only required to respond to those issues clearly identified by the moving party as being subject to the motion.  It is with these standards in mind that the instant motion must be decided.

                              II.

     Although the case is before the Court by way of a summary judgment motion, no significant affidavits have been submitted by either party.  The defendants have supported their motion with a

large number of exhibits, most of which relate either to
grievances filed by Ms. Grant or to her medical treatment.  Ms.
Grant has not submitted any affidavits.  However, she did swear
to the allegations in her complaint.  The facts upon which this
matter will be decided are therefore drawn primarily from Ms.
Grant's complaint.

   In an earlier Report and Recommendation issued in this case
on September 14, 2005, the Court summarized the allegations in
the complaint as follows:

> Ms. Grant claims that her conditions of
> confinement are unconstitutional because
> Defendants have not housed her in a smoke-free
> environment.  Instead, she is housed in Kennedy
> Building where allegedly, "24 hours and 7 days a
> week," she is "forced to breathe clouds of
> Environmental Tobacco Smoke."  Complaint at 1. She
> claims that she has been diagnosed with chronic
> lung disease and enlarged lymph nodes in her chest
> cavity.  Breathing in tobacco smoke causes her
> "shortness of breath, chest pains, headaches, rash
> outbreaks and inflammation in her lungs."  Id.
> She asserts a claim of denial of adequate medical
> care based on Defendants' alleged failure to treat
> her for these reactions.  She also claims that
> Defendants have failed to maintain Kennedy
> Building in a clean and sanitary manner.  She
> claims that "mold, mildew and bacteria grows
> unchecked on walls/ceilings, shower stalls and
> drains are laden with garbage and slime, toilets
> leak out into the sleeping dorms causing urine
> [and] feces smells to reek, [and there is an]
> infestation of nests of black, brown [and] tan
> spiders that constantly attack."  Id. at 3.

Ms. Grant's subsequent filings have expanded somewhat on her
initial claims.  With respect to tobacco smoke, she concedes that
although she was placed in a non-smoking housing unit and ORW had
adopted a policy concerning smoking in that unit, ORW continued
to assign smoking inmates to the unit and they smoked in the
bathrooms and within twenty feet of the unit's outside doors,

both of which were violations of the non-smoking policy. She
also claims that enough smoking had occurred in the building in
the past that the smell of tobacco smoke lingered even when no
one was actually smoking. She asserted that she complained about
the violations of the no smoking policy to numerous individuals,
including several of the named defendants, and that nothing ever
changed.

With respect to her claim for medical treatment, most of her
dissatisfaction appears to be addressed to a particular
physician's assistant, Mr. Farling. She asserts that he either
failed to diagnose or misdiagnosed her pneumonia, leaving that
condition untreated for a substantial period of time. She claims
that one or more of the individual defendants must have been
responsible for hiring Mr. Farling and therefore should be held
responsible for his improper medical treatment. Finally, she
notes that although the defendants claim (and have provided
documentary support for that claim) that exterminators regularly
visited ORW, they did not regularly visit her housing unit and
that spiders and other insects proliferated. The defendants have
asserted, and Ms. Grant has not contested, that Ms. Grant has
been transferred from the ORW to a pre-release center and that
she is no longer subject to the conditions about which she
complains. It is with these facts in mind that the motion for
summary judgment will be decided.

III.

The Court turns first to Ms. Grant's claim that her Eighth
Amendment rights were violated when she was exposed to ETS. The
defendants argue primarily that none of them can be held liable
because on this claim there is no evidence that they were aware
of the situation which allegedly existed at the Kennedy housing
unit where Ms. Grant resided. Because the complaint contains
sworn allegations that at least some of them were placed on

4

notice of violations of the non-smoking rules at that unit, the Court chooses to focus its analysis on the substantive elements of the claim rather than upon the question of whether any of the defendants were on notice that smoking was occurring at the Kennedy housing unit.

The Eighth Amendment generally prohibits prison officials from being "deliberately indifferent" to the health or safety of prison inmates and, as a result, causing them to suffer unnecessary or purposeless pain or injury. In <u>Farmer v. Brennan</u>, 511 U.S. 825, 839 (1994), the Court adopted "subjective recklessness as used in the criminal law" as the appropriate definition for deliberate indifference. It held that "a prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety ...." <u>Id</u>. at 837. Officials must be aware of facts from which they could conclude that a substantial risk exists and must actually draw that conclusion. <u>Id</u>. Prison officials who know of a substantial risk to the health or safety of an inmate are free from liability if "they responded reasonably to the risk, even if the harm ultimately was not averted." <u>Id</u>. at 844.

The mere fact that an inmate, even one with a lung condition, is exposed to tobacco smoke in the prison setting is not enough to demonstrate that the inmate's Eighth Amendment right to be free from cruel and unusual punishment has been infringed. As the Court of Appeals explained in <u>Talal v. White</u>, 403 F.3d 423, 427 (6th Cir. 2005):

> "The Eighth Amendment forbids prison officials from 'unnecessarily and wantonly inflicting pain' " on a prisoner by acting with "deliberate indifference" to the prisoner's serious medical needs. <u>Blackmore v. Kalamazoo County</u>, 390 F.3d 890, 895 (6th Cir.2004) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). The test for determining

5

deliberate indifference based on exposure to ETS has both objective and subjective components. <u>Helling v. McKinney</u>, 509 U.S. 25, 35, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). To satisfy the objective component, a prisoner must show that his medical needs are "sufficiently serious." <u>Hunt v. Reynolds</u>, 974 F.2d 734, 735 (6th Cir.1992). The exposure to smoke must cause more than "mere discomfort or inconvenience." <u>Id</u>. at 735. Additionally, the prisoner must demonstrate that the risk is one which society deems "so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." <u>Helling</u>, 509 U.S. at 36, 113 S.Ct. 2475. To satisfy the subjective component, a prisoner must show that prison authorities knew of, and manifested deliberate indifference to, his serious medical needs. <u>Id</u>. at 32, 113 S.Ct. 2475.

With respect to the objective prong of the <u>Farmer</u> test, there appears to be no question that Ms. Grant suffered from sarcoidosis, which is a lung condition, and she also claims to have developed pneumonia at one point during her stay at ORW. She claims that these medical conditions necessitated her residence in a smoke-free environment.  She also claims exposure to tobacco smoke.  However, as the quoted language from <u>Talal v. White</u> indicates, in order to prove an Eighth Amendment violation, there must also be evidence in the case that the exposure to tobacco smoke caused an inmate more than "mere discomfort or inconvenience" and that the risk to the inmate's health was sufficiently grave so that a civilized society would not tolerate exposing inmates to such a risk.  Ms. Grant has simply not met that standard here.

The standard for proving an Eighth Amendment violation through exposure to ETS requires not just allegations, but evidence, that an inmate has been subjected to unreasonably high levels of ETS and that this exposure has caused or is likely to cause a significant adverse impact on the plaintiff's future health.  <u>See Williams v. Howes</u>, 2007 WL 1032365, *15 (W.D. Mich. March 30, 2007).  Other than her allegation that she was exposed

from time to time to second hand smoke because inmates were
violating the non-smoking policy in and around her housing unit,
Ms. Grant has not alleged that the housing unit contained
unreasonably high levels of ETS. Some exposure to tobacco smoke
is a fact of everyday life, and it is not readily apparent that
the health or well-being of a person who suffers from sarcoidosis
is adversely affected by periodic exposure to ETS. Without any
evidence on this point, there is simply no way the Court can
conclude that the objective prong of the <u>Farmer v. Brennan</u>
standard has been met.

Perhaps more significantly, however, there is no evidence
from which the Court or a jury could conclude that the defendants
were deliberately indifferent to Ms. Grant's serious medical
needs. It is uncontroverted that ORW, along with many other
prisons in the State of Ohio, gradually began implementing no-
smoking policies in the mid-1990s. By the time the events in
this case occurred, ORW had designated a number of housing units
as no-smoking units. The fact that occasional violations of the
policy occurred do not demonstrate that prison officials acted
with deliberate indifference to the health of the inmates housed
in those units. Many cases have held that the "imperfect
enforcement of non-smoking policies does not rise to the level of
deliberate indifference." <u>See Williams v. Howes</u>, *supra*, at *14;
<u>see also Henderson v. Martin</u>, 73 Fed.Appx. 115 (6th Cir. August
4, 2003). Because the Eighth Amendment requires deliberate
indifference, the fact that prison officials may have been
negligent in enforcing a non-smoking policy, or even reckless in
their enforcement, is not enough to prove liability. Rather,
there would have to be evidence from which the Court or jury
could conclude that the specific prison officials named as
defendants in this case were aware of and deliberately
disregarded a serious risk to Ms. Grant's health by their

7

allegedly haphazard enforcement of the non-smoking rules at her
housing unit.  There is no such evidence here, and summary
judgment is therefore appropriate on this claim.

                              IV.

     Little detailed discussion is required with respect to Ms.
Grant's other two claims.  Whether or not the physician's
assistant who allegedly misdiagnosed her pneumonia was
deliberately indifferent to Ms. Grant's medical needs, she has
not shown that any of the four named defendants, none of whom are
medical personnel, was involved in any way in the course of her
medical treatment.  She alleges that one or more of the
defendants should be responsible for that physician's assistant's
actions because they must have hired him to perform his duties.
However, the mere fact that a defendant is a supervisor of
someone who allegedly violated the Constitution and hired that
person to perform his or her duties is not sufficient to state a
claim against that supervisor under 42 U.S.C. §1983.  Rather,
that statute requires that, in order for a defendant to be
liable, the defendant must have been personally involved in the
alleged depravation.  There is no evidence in this case that that
is so with respect to any of the remaining defendants, and they
are therefore entitled to summary judgment on the medical
treatment claim.  See Monell v. Department of Social Services,
436 U.S. 658 (1978); Bellamy v. Bradley, 729 F.2d 416, 421 (6th
Cir. 1984).

     With respect to the insect infestation claim, defendants
have argued that the claim was never properly exhausted because
Ms. Grant asserted it only in informal complaints, or "kites,"
and did not complete the three-step grievance process which is
available to Ohio inmates.  The record appears to support that
assertion.  Further, in light of the evidence presented by
defendants that they had an extermination program in place at the

                               8

ORW, and absent any evidence from Ms. Grant that the level of insect infestation caused her to suffer serious health problems, summary judgment is appropriate on this claim as well.  See Wells v. Jefferson County Sheriff Department, 159 F.Supp.2d 1002 (S.D. Ohio 2001), aff'd 35 Fed.Appx. 142 (6th Cir. 2002).

                                   V.

     Based upon the foregoing, it is recommended that the defendants' motion for summary judgment (#26) be granted.  In light of this recommendation, Ms. Grant's motion for the appointment of counsel (#29) is denied.


                      PROCEDURE ON OBJECTIONS

     If any party objects to this Report and Recommendation, that party may, within ten (10) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. Section 636(b)(1).

     The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir.1981).

                                   9

/s/ Terence P. Kemp
United States Magistrate Judge